IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID SHELBY,

        Plaintiff,

v.                          Nos. 14 C 824, 14 C 2419

THOMAS J. DART, Sheriff of Cook County,    Judge Virginia M. Kendall

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

Plaintiff David Shelby, a former inmate at Cook County Jail, filed two lawsuits against Sheriff Thomas Dart alleging violations of his civil rights pursuant to 42 U.S.C. § 1983.[1] (14 C 824, Dkt. No. 9; 14 C 2419, Dkt. No. 1.) Specifically, Shelby complained about the conditions of confinement in Division III Annex and Division V of the Cook County Jail.[2] Under the Prison Litigation Reform Act ("PLRA"), Shelby, like any prisoner, may not initiate a suit concerning his confinement conditions under federal law prior to exhausting "such administrative remedies as are available" within the jail. *See* 42 U.S.C. § 1997e(a). The Defendant contended that Shelby failed to properly exhaust the administrative remedies available to him because his grievance forms were treated as "non-grievance requests" and Shelby failed to follow the necessary steps in converting his requests into full-fledged grievances and appeals. Shelby asserted that he pursued relief at Cook County Jail in the manner knowable to him. Based on this conflict, the Court held a hearing to resolve the factual issues surrounding Shelby's exhaustion. *See Pavey v. Conley*, 544

---

[1] Shelby filed his original complaint in the 824 case on February 5, 2014. He subsequently amended that complaint on April 11, 2014. Shelby instituted the 2419 action on April 3, 2014.
[2] The 824 case pertains to Shelby's Division V issues while the 2419 case addresses Division III Annex conditions.

F.3d 739 (7th Cir. 2008). Based on the testimony and documents presented at the hearing[3], the Court finds that the Defendant failed to carry its burden to show that Shelby failed to exhaust the available administrative remedies with respect to both his Division III Annex August 5, 2013 and Division V December 11, 2013 and December 21, 2013 claims. The issues raised in Shelby's August 5, 2013 Division III Annex grievance form will proceed to their merits. Similarly, Shelby's Division V claims for seeping water and water accumulating on his cell floor will not be dismissed for failure to exhaust under the PLRA and will move forward. The remainder of Shelby's claims in his two federal lawsuits are dismissed as unexhausted.[4]

## BACKGROUND

Shelby was originally incarcerated in the Cook County Jail on June 1, 2013. (Tr. 114:21-23.) Shelby's tenure in the Cook County Jail was not limited to one division assignment. Shelby was initially assigned to Division III Annex for exactly seven days. (Tr. 115:16-23.) On June 7, 2013, Shelby transferred to Division V, where he remained until late October 2013. (Tr. 115:24-116:4.) Shelby was then placed in Mercer County Jail until being transferred back to Cook County Jail's Division V on December 4, 2013. (Tr. 116:5-12.) Shelby remained in Division V until January 7, 2014, when he was placed back in Division III Annex. (Tr. 116:13-18.) Shelby could not recall precisely if he was moved subsequently, but he stayed in Division III Annex through April 2014. (Tr. 117:4-6.)

When Shelby arrived at the Cook County Jail, he went through an intake procedure where jail staff asked him questions about his health and issued him clothing. (Tr. 114:24-115:10.) According to John Mueller, the Deputy Director of Inmate Services of the Cook County Jail, inmates receive a copy of the Inmate Handbook and Rules and Regulations during

---

[3] Citations to the hearing transcript are noted as "Tr.__:__."
[4] Subsequent to the hearing, the Defendant stated that it was withdrawing its affirmative defense of failure to exhaust on the remaining Division III and Division III Annex cases consolidated before the Court.

2

processing. (Tr. 36:7-14.) Mueller also said that the Inmate Handbook is available through the law library at the jail, and every division maintains law library services. (Tr. 37:10-19.) The Inmate Handbook is a document that informs inmates of many aspects of the Cook County Jail, including inmate rights, health services, responsibilities, and discipline. (Def. Ex. 2, Inmate Handbook Table of Contents.) Among other things, the Inmate Handbook advises inmates of the procedures for inmate grievances and requests. (Inmate Handbook at 20-22.) Shelby testified that he never physically received a copy of the Inmate Handbook. (Tr. 115:11-15.)

The Inmate Handbook and the individual grievance forms explain the Cook County Jail's internal grievance process to inmates. The Inmate Handbook provides that an inmate must file a grievance within fifteen days of the event complained of, unless the incident involves sexual assault. (*Id.* at 21.) Inmates must provide their completed forms to Correctional Rehabilitation Workers ("CRWs"). (*Id.*) The Cook County Jail is obligated to respond to any form within fifteen days, at which point it issues the complaining inmate a written decision. (*Id.*) In the event an inmate disagrees with the resolution of his complaint, the inmate has fourteen days to appeal the decision. (*Id.* at 22.) Similarly, the grievance forms circulated to the inmates state that "[t]o exhaust administrative remedies, appeals must be made within 14 days of the date the inmate received the response." (Def. Ex. 7, Dec. 21, 2013 Grievance Form at 2.)

Both the Inmate Handbook and the grievance forms distinguish between "inmate requests" and "inmate grievances." (Inmate Handbook at 20; Dec. 21, 2013 Grievance Form at 1.) Mueller stated that non-grievance requests are typically less serious and may be resolved at the divisional level. (Tr. 31: 3-8.) As examples, inmates should make requests, instead of grievances, when they "need assistance, services, or basic supplies." (Inmate Handbook at 20.) Grievances are classified as "formalized written complaint[s] [an inmate] may use to seek review

3

of a problem related to [the inmate's] conditions of confinement." (*Id.*) Issues that fall within the grievance definition include the violation of Constitutional rights, an inmate's safety or well-being, and unsafe or unclean living areas. (*Id.* at 20-21.) Inmates have no control over whether the Cook County Jail processes grievance forms as requests or grievances; the individual CRWs receiving the grievance forms make that call. (Tr. 31:16-19; 43:11-16.) Additionally, complaints designated as grievances are logged in the jail's central office, while non-grievance requests are not maintained. (Tr. 34:12-19.)

The appellate process differs between grievances and non-grievance requests. The Inmate Handbook offers no information on appealing denied or ignored non-grievance requests. According to Mueller, non-grievance requests (as distinct from grievances) cannot be appealed at all. (Tr. 35:24-36:2.) Instead, the grievance forms provide that "[w]hen a grievance issue is processed as a NON-GRIEVANCE (REQUEST), an inmate may re-submit the grievance issue after 15 days to obtain a "Control Number" if there has been no response to the request or the response is deemed unsatisfactory." (Dec. 21, 2013 Grievance Form at 1.) The "control number" term is not defined in either the Inmate Handbook or grievance form, but Mueller testified that formal grievances receive a control number while non-grievance requests do not receive control numbers or any other form of tracking numbers. (Tr. 31:20-22.) According to Mueller, inmates must refile a complaint originally processed as a non-grievance request if the inmate is unhappy with the response. (Tr. 32:2-8; 78:8-19.) Only then will the inmate receive a control number and be able to follow the formal grievance appeals process. (*Id.*) However, neither the Inmate Handbook nor the grievance forms expressly explain that refiling a form originally marked as a non-grievance request transforms the complaint into an appealable grievance. In fact, the grievance form does not inform inmates that an inmate must refile a form originally processed as

a non-grievance request in order to exhaust his or her administrative remedies with respect to that issue. Instead, the grievance form states that an inmate *may* refile a grievance form in order to obtain a control number. (Tr. 77:23-24; Dec. 21, 2013 Grievance Form at 1.)

Shelby submitted a litany of grievance forms to the Cook County Jail, three of which are relevant to the current proceedings.[5] On August 5, 2013, Shelby filed a grievance concerning his living conditions in Division III Annex. (Tr. 122:20-22; Def. Ex. 4, Aug. 5, 2013 Grievance Form at 1.) Shelby had already been moved to Division V by the time he submitted this grievance. (Aug. 5, 2013 Grievance Form at 1.) Shelby complained that from June 1 to June 7, 2013, his Division III Annex unit was unlivable due to standing water on the floor and a persistent, intense odor. (*Id.*) The Cook County Jail processed this grievance form as a non-grievance request because it was filed well beyond the fifteen-day limit and therefore untimely. (*Id.* at 2; Tr. 48:6-18.) Marking the form as nongrievable, the CRW forwarded the issue to the division superintendent for review or action. (Aug. 5, 2013 Grievance Form at 2.) Shelby acknowledged receipt of this response by signing the second page of the form. (*Id.*) Shelby did not refile this request, but Mueller testified that refiling would not have converted the issue into a grievance. (Tr. 49:10-18.) Mueller said that because the original complaint was untimely, "it's always untimely." (*Id.*)

Shelby submitted two other grievance forms on December 11, 2013 and December 21, 2013 pertaining to his Division V housing. (Def. Ex. 6, Dec. 11, 2013 Grievance Form; Def. Ex. 7, Dec. 21, 2013 Grievance Form.) In his December 11 form, Shelby complained of freezing temperatures and leaking water in his cell. (Dec. 11, 2013 Grievance Form at 1.) Shelby asked to be relocated to another cell as relief from the condition. (*Id.*) The CRW processed this form as a

---

[5] Only Shelby's grievance forms dated August 5, 2013, December 11, 2013, and December 21, 2013 are at issue. Shelby's other grievances are either not disputed as unexhausted (Def. Ex. 3 for failure to appeal) or were filed within the Cook County Jail subsequent to his two federal lawsuits and necessarily unexhausted. (Def. Exs. 12-16.)

5

non-grievance request. (*Id.*) The CRW returned the response form to Shelby on December 14, 2013 and Shelby signed it. (*Id.* at 2.) One week later, on December 21, 2013, Shelby filed a new grievance form, complaining that leaking water from the walls and toilet in his cell caused him to slip and fall. (Dec. 21, 2013 Grievance Form at 1.) In the request for relief section, Shelby asked the Cook County Jail to terminate a certain correctional officer for failing to provide Shelby with a mop to rid his cell of the water. (*Id.*) The accepting CRW categorized the complaint as one of officer misconduct and again filed Shelby's second December form as a non-grievance request. (*Id.* at 2.) Shelby received this response on December 30, 2013. (*Id.*) In both the December 11 and December 23 forms, the responding CRW wrote "Request" in the space designated for a control number. (Dec. 11, 2013 Grievance Form at 1; Dec. 21, 2013 Grievance Form at 1.) Shelby never received a control number for either grievance form and never appealed either disposition. (Tr. 152:15-23; 157:21-22.)

Shelby testified that while he interacted with jail personnel regularly, no one spoke to him about his grievance forms. (Tr. 136:3-19.) Shelby claimed he never learned the grievance appellate process or what to do when the Cook County Jail processed his complaints as non-grievable. (Tr. 139:17-23.) He had no idea that he could submit a second grievance form complaining of the same issues found in an original non-grievance request. (Tr. 139:17-23.) Shelby said that if a CRW had informed him that he needed to refile any form processed as a non-grievance request in order to exhaust his administrative remedies, he would have. (Tr. 139:24-140:3; 141:6-12.)

## **LEGAL STANDARD**

"Prisoners must properly exhaust all available administrative remedies before pursing claims, including § 1983 actions, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th

Cir. 2013) (citing 42 U.S.C. § 1997e(a)). Moreover, the prisoner must exhaust his grievances according to prison procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006). Prisoners must strictly comply with the exhaustion requirement. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). While exhaustion requirements are strict, failure to exhaust is an affirmative defense and the Defendant maintains the burden of proof of showing that Shelby failed to exhaust here. *See Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). To be available as an administrative remedy, the remedy must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard. *See, e.g.*, *Pierce v. Earl*, No. 12 CV 5725, 2015 WL 3664198, at *3 (N.D. Ill. June 11, 2015); *Wieczorek v. Slivia*, No. 12 CV 4904, 2015 WL 73810, at *3 (N.D. Ill. Jan. 5, 2015); *Hicks v. Irvin*, No. 06 CV 645, 2011 WL 2213721, at *7 (N.D. Ill. June 7, 2011).

## **DISCUSSION**

Under the PLRA, an inmate must exhaust his administrative remedies by following the procedural rules for grievances in his specific location. *See Woodford*, 548 U.S. at 90. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (inmate must "take all steps prescribed by the prison's grievance system"). While an inmate must follow the grievance procedures proscribed by the jail, the inmate is only required to utilize those steps to the extent they are available. *See Woodford*, 548 U.S. at 102; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The "availability" of a remedy is a matter of what, in reality, is open for a prisoner to pursue. *See Kaba*, 458 F.3d at 684. When jail staff fails to inform inmates of the grievance procedure or grievance rules are applied haphazardly, inmates cannot be expected to follow the

7

protocol. *See King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."); *Ajala v. Tom*, 592 F. App'x 526, 528 (7th Cir. 2015) (where prison officials thwart inmates from exhausting, "the process that exists on paper becomes unavailable in reality").

Shelby's issues found in his grievance forms concern his living conditions in both Division III Annex and Division V of the Cook County Jail. Because his issues with each division are discrete from one another and involve distinct grievance forms, the Court addresses them separately.

### A.    Division III Annex Conditions (Case No. 14 C 2419)

There is no dispute that Shelby filed his August 5, 2013[6] complaint pertaining to the conditions of his cell in Division III Annex on the grievance forms provided by the Cook County Jail. Nor do the parties dispute how the August 5, 2013 grievance was resolved or whether Shelby appealed. Instead, they agree that the Cook County Jail processed Shelby's complaint as a non-grievance request and Shelby did not appeal or follow up this resolution. The only dispute concerning Shelby's August 5, 2013 grievance form that complained of leaking water and unbearable odor is whether an additional step in the grievance process was realistically available. *See Woodford*, 548 U.S. at 102.

Cook County Jail staff determined that Shelby's Division III Annex complaint should be classed as a non-grievance request. (Tr. 48:16-18.) The patrolling CRW made that determination; Shelby exercised no control over that decision. (Tr. 31: 16-19.) Though Shelby received a response to his August 5, 2013 grievance form, the appeals section had been crossed out. (Aug. 5, 2013 Grievance Form at 2.) And while the Inmate Handbook describes the appeals

---

[6] The Court notes that Shelby filed two grievance forms on August 5, 2013. (Def. Exs. 3 & 4.) The first of these was processed as a grievance, received a control number, and was not appealed. Shelby did not exhaust this grievance and it is not currently at issue.

process for formal grievances, it does not instruct inmates that they must refile grievance forms originally determined to be non-grievance requests to convert them into formal grievances, nor does the Inmate Handbook explain that such refiling is necessary to complete the administrative exhaustion requirement. This lack of information is consistent with Mueller's testimony, who stated that non-grievance requests are not appealable at all. (Tr. 35:24-36:2.) Mueller further stated that the CRW on duty would not have instructed Shelby that he needed to appeal his August 5, 2013 grievance form disposition because the issue was not appealable. (Tr. 100:19-23.) Therefore, based on the information in the Inmate Handbook, the sole resource Shelby would have been able to access, Shelby had "take[n] all steps prescribed by the prison's grievance system" with respect to his August 5, 2013 complaint. *Ford*, 362 F.3d at 397; *see also Harper v. Dart*, No. 14 C 1237, 2015 WL 3918944, at *4 (N.D. Ill. June 24, 2015) (concluding that jail had failed to show that prisoner did not exhaust administrative remedies where jail staff crossed out appeals section on grievance form response and inmates were not provided explicit instruction on converting non-grievance requests to formal grievances); *Munoz v. Dawalibi*, No. 14 C 601, 2015 WL 719373, at *6 (N.D. Ill. Feb. 18, 2015) (finding that inmate exhausted administrative remedies where "he submitted [] two grievances and jail staff determined that they were going to be addressed in a manner outside the written grievance procedure").

Despite the dearth of information in the Inmate Handbook, the Defendant argues that the Cook County Jail's exhaustion procedures required Shelby to resubmit his August 5, 2013 non-grievance request as a grievance in order to continue on with the administrative process. The Court is not convinced that such an action would have converted Shelby's original request into a formal grievance and given him an opportunity to appeal. During his hearing testimony, Mueller testified that refiling the original August 5, 2013 form would not have made it a grievance.

9

Specifically, when the Court inquired "when this non-grievance is returned and it says it's non-grievable, is this where you would say then this can become a grievance if he files it again . . . at that moment?"; Mueller responded: "No. Once it's untimely, it's always untimely." (Tr. 49:10-18.) This testimony demonstrates that even if Shelby had refiled his complaint, he would not have received a control number. Instead, it would be marked as "untimely" again and processed as a non-grievance request on that basis. Theoretically, Shelby could have "become trapped in a never-ending cycle of unappealable requests." *Harper*, 2015 WL 3918944, at *5. Shelby cannot be penalized for failing to take an action that would not have resulted in a meaningfully different outcome. *See White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015) (where inmate was "effectively prevented from filing a grievance," there could be "no argument that she failed to exhaust her administrative remedies"). Once jail personnel processed his August 5, 2013 grievance form as a non-grievance request based on untimeliness, a result that made it impossible for Shelby to convert the issue into a formal grievance or appeal the resolution, he had exhausted his available administrative remedies. *See Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (where inmate "properly followed procedure and prison officials were responsible for the mishandling of his grievance," court could not say that inmate failed to exhaust his remedies). Because the Defendant did not establish that Shelby failed to exhaust his administrative remedies with respect to his August 5, 2013 grievance form concerning Division III Annex conditions, the claims found in that form will proceed to their merits.

### B. Division V Conditions (Case No. 14 C 824)

Similarly, Shelby's complaints concerning leaking and standing water in his Division V cell will move forward. Again, there is no dispute that Shelby filed his December 11, 2013 and December 21, 2013 complaints about leaking water in his cell on grievance forms provided by

10

the Cook County Jail. The jail processed both grievance forms as non-grievance requests, Shelby did not receive a control number for either form, and Shelby did not pursue an appeal. As detailed above, the Inmate Handbook contains no information on the refiling of non-grievance requests and appealing the response to a non-grievance request would be futile because non-grievance requests are not appealable. Despite this painfully opaque non-grievance request process, the Defendant contends that, notwithstanding the absence of instruction in the Inmate Handbook, Shelby needed to resubmit his December 11 grievance form exactly in order to receive a control number and exhaust his remedies.

The Defendant argues that because Shelby sought different relief[7] in his December 11 and December 21 complaints, the December 21 form was not a refiling of the original form and therefore did not warrant a control number. (Tr. 169:23-170:4.) A number of issues with the Cook County Jail's non-grievance request procedure preclude the Court from finding that Shelby failed to exhaust with respect to his leaking water issues. First and foremost, the Cook County Jail failed to properly respond to Shelby's December 11 grievance form when it deemed the complaint a non-grievance request. According to the Inmate Handbook, a grievance (as opposed to a request) involves issues concerning conditions of confinement like unsafe or unclean living areas. (Inmate Handbook at 20-21.) Both Mueller and defense counsel agreed that Shelby was complaining about his living conditions in Division V in his December 11 grievance form when he complained of seeping and standing water. (Tr. 66:15-18; 169:17-20.) Because Shelby's December 11 grievance form directly addressed the safety and cleanliness of his living area, it should have been processed as a formal grievance, given a control number, and Shelby should

---

[7] In Shelby's December 11, 2013 grievance form, he asked to be relocated to another cell as relief from the leaking water. (Dec. 11, 2013 Grievance Form at 1.) In contrast, Shelby sought the termination of a jail employee in his December 21, 2013 complaint. (Dec. 21, 2013 Grievance Form at 1.) Despite the different requests, both forms detailed an issue with water running down the walls of his cell and accumulating in a puddle in the middle of his floor.

11

have had an opportunity to appeal any resolution. Instead, the CRW marked it as a non-grievance request, thereby stripping Shelby of the opportunity to appeal and, apparently, forcing him to take an additional step (by refiling the form) not detailed in the Inmate Handbook in order to exhaust his remedies. The Court will not punish Shelby for the jail's improper management of his December 11, 2013 grievance form by processing it as a non-grievance request. *See Dole*, 438 F.3d at 811 (inmate not at fault where jail staff mishandles grievance forms).

More fundamentally, however, the Defendant has failed to carry its burden in demonstrating that Shelby did not exhaust his available administrative remedies because the Defendant's position requires inmates to follow a procedure that they are not aware of. *See White*, 800 F.3d at 397 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures that they have not been told about."). The Defendant contends that because Shelby's December 11 form was processed as a non-grievance request, he needed to refile the form, receive a control number, convert the request into a formal grievance, and finally appeal any grievance disposition in order to exhaust his administrative remedies. This argument is plagued by three fatal deficiencies. First, the Inmate Handbook, which includes the jail's explanation of the grievance procedure to inmates, is silent regarding the non-grievance request process. Inmates are not informed (1) who determines whether a complaint is a grievance or a non-grievance request; (2) what an inmate must do to follow up on a complaint deemed a non-grievance request; or (3) whether an inmate can appeal a non-grievance request resolution. According to Mueller, an inmate may not. Without this integral information in the Inmate Handbook, inmates cannot be expected to know the rules when it comes to non-grievance requests. *See Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) ("[A] remedy is not available if essential elements of the procedure for obtaining it are concealed.").

Despite the unhelpfulness of the Inmate Handbook with respect to non-grievance requests, the Defendant points to the grievance forms themselves, which state that "[w]hen a grievance issue is processed as a NON-GRIEVANCE (REQUEST), an inmate may re-submit the grievance issue after 15 days to obtain a "Control Number" if there has been no response to the request or the response is deemed unsatisfactory." (Dec. 21, 2013 Grievance Form at 1.) The second issue with the Defendant's current position is the grievance form's use of the word "may" rather than "must." The word "may" is ordinarily permissive, rather than mandatory. *See Winston v. O'Brien*, 773 F.3d 809, 813 (7th Cir. 2014); *see also, e.g.*, *Harper*, 2015 WL 3918944, at *4 (questioning requirement of refiling non-grievance request because grievance form uses the word "may"). Nowhere on the grievance form does the jail inform inmates that in order to exhaust administrative remedies with respect to any issue that the jail deems to be a non-grievance request, they are *obligated* to refile the grievance issue. On the other hand, in the appeals section of the grievance form, the form plainly states that "[t]o exhaust administrative remedies, appeals must be made within 14 days of the date the Inmate received the response." (Dec. 21, 2013 Grievance Form at 2.) Unfortunately for inmates, non-grievance requests cannot be appealed. Because the jail does not tell inmates that they must refile a non-grievance request to exhaust administrative remedies, but rather that they "may" in order to receive a "control number," inmates cannot be expected to know that this requirement exists. *See King*, 781 F.3d at 896 (inmates "are not required to divine the availability of other procedures").

Finally, the grievance forms never explain to inmates the import of receiving a "control number." While the grievance forms state that refiling of a non-grievance request leads to the dispatch of a "control number," "control number" is never defined nor equated with a formal grievance. Similarly, the Inmate Handbook does not discuss control numbers in the grievance

13

procedure chapter. Without the nexus between control numbers and formal grievances, an inmate has no way of knowing that the refiling of a non-grievance request converts the complaint into a formal grievance. The only other way an inmate could learn of the conversion is through an oral conversation with a CRW. There is no evidence of such a conversation here. (Tr. 102:4-19.) For these reasons, the Defendant failed to carry its burden of demonstrating that Shelby did not exhaust all available administrative remedies concerning his December 11, 2013 and December 21, 2013 grievance forms.

An administrative remedy is not available if it is "hopelessly unclear whether any administrative remedy remained open" for the prisoner. *Westefer*, 422 F.3d at 580 (citation and internal annotation omitted). Here, the Cook County Jail has failed to provide its inmates with the requisite information concerning non-grievance requests sufficiently to demand compliance with that system. The Court therefore permits the issues raised in Shelby's August 5, 2013, December 11, 2013, and December 21, 2013 grievance forms to proceed to their merits.

As a final note, although not critical to the analysis here, the Court also questions whether the Inmate Handbook that describes the appeal process is readily available to all detainees. Although the Defendant states that all detainees are provided a copy upon entry to the jail and that they also have access to the Inmate Handbook in the library, there was little evidence to support these conclusions. A better practice would be to both provide a copy to the detainee upon entry and have him verify that he has received it while also making a copy available for review in each division. Further, posting of basic grievance procedures within each division would certainly aid the detainees in understanding those procedures. Finally, the elimination of a form that provides for the Defendant's agent to choose whether to identify a complaint as a "grievance" or as a "non-grievance" would go a long way in eliminating the need for exhaustion

hearings. If a grievance is filed, the form should call it a grievance and explain the appeal process. If the Defendant wants to classify a complaint as a "non-grievance," then it should clearly inform the detainee that there is a different form with a different title that must be used in order to eliminate any confusion.

## CONCLUSION

For the reasons stated herein, the Court concludes that the Defendant has not carried its burden of proving that Shelby failed to exhaust the administrative remedies available to him regarding his August 5, 2013, December 11, 2013, and December 21, 2013 grievance forms. The issues found in those grievance forms will move forward.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12/9/2015